I want to say thank you to the judges of the Eighth Circuit for allowing me to argue on behalf of my client Mr. Hansen. The appellate case before us has several issues. I hope they're as exciting as international comedy and choice of law. The district court cases had three trials, two separate dockets, and one man Mr. Robert Hansen who was accused and found guilty of selling drugs and possessing firearms when he wasn't supposed to. In order to avoid confusion the two dockets, one is 4014, I'm going to talk about that as a drug case, 4054 as the gun case. And that's where I want to start is in the gun case. Starting with the issue of evidence of prior bad acts that was introduced against Mr. Hansen. This evidence came from a cooperator, Jason Blau, that Mr. Hansen stored methamphetamine at Mr. Blau's residence on a prior occasion. The charged crime to warrant its admission into evidence. However, we are asking this court to call this evidence what it actually is, and that is in admissible propensity evidence. Basically what the evidence tells the jury is Mr. Hansen broke the law on a prior occasion, thus he's breaking the law now. What's your best Eighth Circuit case on that? Because we had a, there was a limiting instruction here. To be What's the closest case that suggests that this won't cross the line? Yes, your honor. As far as Eighth Circuit cases, I don't, you know, back in our brief we really didn't have one that was analogous to the situation we addressed. But I would talk about the limiting instruction as well as the case I know the district court and the government cited, and that was the Green-Bowman case. In that case it talked about how a felon in possession had possessed a gun on a prior occasion, and it's our assertion that that case is very dissimilar from the present case. You know, in that case a limiting instruction was enough. I mean somebody possessed the gun on a prior occasion and they're possessing a gun now so they can hardly say, you know, they don't have any knowledge that they're not allowed to possess this gun. But sometimes a limiting instruction is not enough, and we assert that it's not enough in this case. The evidence in this case is, you know, as I get into the balancing, the 403 balancing, we'll see that it was highly prejudicial. It was almost as prejudicial as it gets, asserting that somebody was a heavyweight drug dealer on a prior occasion. Now again, as the government, and we said in our briefs, there's a four-part test to determine whether the evidence gets in. It sort of touched on the balancing, but going back to the beginning, first of all, it's our assertion this evidence had no relevance in the case. It didn't support any of the elements of the crimes charged of the possession of a firearm by a prohibited person. Second, we're arguing the evidence is not similar in kind. I understand the government's argument that, you know, he asked Blau to store this evidence, or sorry, asked Blau to store the methamphetamine on a prior occasion, and thus he asked Blau to store guns on this occasion. But really, that's where the similarities end. As well, touching on the second element of the Bad Axe test, it was too far remote in time. This wasn't the day before, it was the month before. I mean, this happened four years earlier in 2017 as compared to when the guns were found in 2021. The third part of the test, whether it's evidence itself is based solely on Blau's testimony. We touched on Blau's credibility in the brief, and I'm going to touch briefly on it maybe later if we get into the sufficiency of the evidence issues. But really, that's the only place the methamphetamine storage evidence came from, was Blau's testimony. It didn't come from a separate source. And again, getting back to the balancing part of this, the little probative value this methamphetamine storage evidence had was heavily outweighed by its prejudice. I mean, people have strong feelings about drug trafficking. It isn't a small bad act. I know that in its order, the district court talked about how the prejudicial value, or prejudicial prejudice, sorry, was diminished by the fact that Hansen had admitted to being a drug user. But again, these are almost apples and oranges. The use of pounds of methamphetamine. I mean, the law treats it as such. Now, the government reasons for asking the prior bad acts evidence to be introduced, modus operandi was the main one. However, that's a specific way of operating by a criminal defendant. And we're arguing that to say this is modus operandi really generalizes it to a point that the exception is swallowed up by the rule. The other reasons the government cites in its brief, intent, preparation, plan knowledge, absence of mistake or accident, all those really go to a state of mind. And with the possession of prohibitive firearm, it really doesn't affect the state of mind, this evidence about storage of methamphetamine on a prior occasion. The last thing I want to touch on, your honors, is the government's argument in the brief that even if the court finds this was error, the court should find it's harmless error. It's our assertion that it is not harmless error. Most of the evidence, again, the government cites in its brief that shows a heavy weight of evidence is from that same cooperator, Mr. Blau. Our argument is there was not such... Did Sherlock testify that the storage was also done at Sherlock's place? Your honor, the Sherlocks testified that guns were That evidence was not objected to. I think maybe there's a closer similarity there. And so again, that's not our argument in the brief that the Sherlock evidence shouldn't come in, but that was the Sherlock evidence. So again, we're arguing that it's not harmless error. The second issue I want to touch on, your honor, is the verdict form issue as to count six in the drug case. And that's our argument that there should have been an interrogatory on the verdict form for the firearm. No objection on this one, too, right? That is correct, your honor. And so we do admit there's no objection on this one, and so we're into plain error review. I know the government had gone a step further and in the district court, or waived it here on appeal. However, I know the case it cites has to do with the instruction that was requested by the defendant in that case, and so we're asserting there wasn't a waiver and we can proceed on plain error review. As far as the interrogatory to the verdict form in count six, in the drug case we're saying the district court did plainly err in not putting that interrogatory in the verdict form. There are four guns on the case. In the first trial in the drug case, Mr. Hance was acquitted of three of those guns and found guilty on one of the guns. There was obviously a retrial for issues, you know, we didn't bring up in the brief. And then in the second trial there was no interrogatory on the verdict form. Now we believe this error is so substantial that the plain error review is warranted. We're asserting the error is obvious. The verdict form was wrong. It affected Mr. Hance's fair trial and a unanimous verdict of guilt free from error. And I don't know, did both parties request the instructions like the verdict director? You know, some judges are careful to say, is this from both of you or one of you? Yes. So tell me the truth here. Yes, Your Honor. In this case, the district court presented a proposed set of instructions that included the verdict form and asked for any objections. There are no objections to the instructions or the verdict form. So again, it kind of is a little bit step further than just requesting a certain particular verdict form. This was presented and no objections were made. Now, I know the government brief states, you know, there's no factual legal basis for this claim because there really was only one firearm at issue in terms of what was on instruction number nine. However, it's our assertion that was really only half the story. There was only one gun in instruction number nine, but there was discussion of other guns in testimony of the trial, particularly during Blau's testimony talking of the multiple firearms he had hid for Mr. Hance. And again, Mr. Blau testified at both trials, so it does get a little duplicative. Again, understanding only one firearm was listed in instruction number nine. However, the model instructions do recommend that an interrogatory should be provided in a gun case. And we submit to you that the reason for that is so we know the jury got it right, that they are finding a defendant guilty of the actual gun charged in the indictment. The instruction number nine but still did not provide that interrogatory. And so we are asserting that is plain error for that reason that should be reversed. Was instruction number nine limited to the one firearm? That is correct. The one firearm was in instruction number nine. And we take the instructions as whole, right, to see if the jury is fairly apprised by the total totality of the charge. And why is that cross-reference insufficient to make the totality of the charge a correct and fair statement of law? I guess in response to that question, just looking at the verdict form and the language in the verdict form of referencing possession of a firearm by a prohibited person is versus the instruction number nine referencing the specific firearm. Along with the fact other firearms were presented in testimony, I do believe there's that inconsistency there between the verdict form and the instruction number nine. Now did the jury actually find that he didn't illegally possess three firearms? Am I wrong? Tell me about the three firearms. So you can tell I'm confused. Yeah, no, and that was so in this case there was the the first trial in the drug case that was reversed because of juror misconduct issues at the district court level. And then a new trial was had. And so in the in the first drug case trial, there was an interrogatory with all four firearms. The jury in the interrogatory only marked the one firearm. I can't remember the name of it off the top of my head, but the fourth firearm was marked as guilty. And so when Mr. Hansen was retried, that firearm was the only one that was included in the instructions. Thank you. So and then beyond plain error review, we did address that this error is so obvious it could potentially be taken up as an ineffective assistance claim on direct appeal. We believe that this failure meets the Strickland test. Again, finding the verdict form deficient, we believe there's deficient performance by counsel not objecting and prejudice to Mr. Hansen. As well as we believe there are sentencing errors. I'm getting a little bit in my rebuttal, but I do want to address briefly the sentencing errors that we believe were had. A lot of it was based on credibility of witnesses, but we believe the judge did abuse his discretion in finding the enhancements in the weight. And with that, I'll go into rebuttal or reserve the rest of my time for rebuttal. Thank you, Your Honor. Mr. Wade, please counsel to support. Sean Wade representing the Northern District of Iowa. I was the trial attorney on all the cases here. Unfortunately or fortunately for Mr. Roth, he was only in regards to the sentencing phase and the appellate phase in this case. We had two separate trial attorneys prior to that. In this case, we have two cases. The 4014 case, the 4054 case, which is sometimes referred to as the drug and gun cases, respectively. Three trials, same defendant, drug trafficking and illegal possession of firearms, overlapping investigations in both time and substance. And ultimately, after analysis of the sentencing factors and the and at least sought for application and argued about, a below-guideline sentence of 300 months. Below the guidelines, a substantially reasonable sentence under all the factors that the court had to consider and all the evidence that was presented. In the first case, there was three controlled buys, two search warrants, four cooperating witnesses outside of the confidential informants that actually involved in the buys. Substantial weight was placed on the defendant on the conspiracy side over time of the conspiracy and there was recorded evidence, photographs, some audio videos, some just audio of all three of the transactions. Jury also weighed things out, including a gun case that has been brought up. There's four guns in the verdict form. They acquitted on the three guns that were all found outside of his residence within the possession of other people, but attributed the one gun that was seized a couple days later after some jail phone calls saying, what about, did they find the stuff behind, did they find whatever it was behind the drywall? When they used that information, they found the AR-15 behind the drywall. All that evidence together supports sufficiency of evidence for the verdicts in that particular case. And the jury weighed it. First case time around, they did not convict on one, I think, protected zone application. They didn't convict on three of the four guns. And the second case around, they didn't actually convict on one of the distributions. And that was a rather unique distribution in which they went in and law enforcement paid $5,000, was handed a box, presumably of drugs, but it turns out to be $13,000 that was given back and a mistake was made by Mr. Hansen. Perplexing moment for law enforcement to decide whether or not, what money exchanged correctly when you've got a $7,000 profit and you can walk away from. But in any event, it was explained, there was an exchange on video, but defendant wasn't as directly involved. Jury weighed that and acquitted on that count. In the second case, search warrant was on the same day as the search warrants on the first case, but the charge was brought much later after Jason Blau, the primary defendant in that case, caught with 17 firearms, flipped and then was sentenced in regards to Mr. Hansen, both with regard to his straw purchasing of a couple of guns that were also found in the search warrants and also his storage of those weapons. And as is discussed in the 404B analysis, storage of drugs a number of years before, I think it's three, three and a half years, close to four years before, which is about the same time as the five weapons were being stored at the Sherlock residence under similar facts. Now the jury acquitted on the Sherlock's facts. Frankly, even looking at the transcript, you can see the lesser credibility of the Sherlock's in their testimony, but clearly that jury believed everything that Jason Blau said. He faced his straw purchasing charge, he was convicted of it, he faced his prohibitive possession charge, and he outlined his involvement with his friend, or at least past friend, Jason Blau's past friend, Robert Hansen, for storage of weapons and storage of guns and drugs in exchange, and this is the part that's kind of lost in the analysis, both on the sufficiency side and on the 404B side, is the whole deal was he stored these to prevent law enforcement to get access to them or be seen, be arrested, but in exchange for drugs. He provided drugs to Mr. Blau, who was a drug user, attested to that, and he got drugs on both occasions for storing those drugs and then later firearms under very, very similar analysis, and also similar to his hiding defendant's purchase of two firearms by use of a straw purchasing of those two particular firearms in that particular case. As I stated, I think the evidence in that second case, that was primarily Jason Blau, but also supported by the straw purchasing evidence, also supported in the evidence from 2017 regarding the Sherlock's, although again, there was an acquittal there, but it was part of the whole package that the court, that the jury considered, and then the court considered in evaluating both motions for new trial and judgment of acquittal. I'm going to turn to the 404B analysis now. It's included in the defendant's appeal, both on ineffective assistance of counsel, also on motion for new trial on that particular 4044 case, and also as a point, as far as its admission into that case. 404B is a rule of inclusion, although frankly, as the case law shows, it's a limited, or carefully limited inclusion, relevant to material issues, similar in kind, not overly remote, supported by the evidence. In this case, it was clearly supported by the evidence. The issue is more about the other factors, and as the court went through the analysis, it was a motion eliminated by the defense, responded to by the specificity, and then the court went through an analysis to find that it primarily added to, it fit as a material issue because it was part of the modus operandi of the defendant in storing contraband, which includes guns and drugs, to hide the evidence from the government, whether that be law enforcement, prosecution, etc. In that particular analysis, the court went through some specificity, and I know that there's been some issues raised with its application, and I know that there's been some cases that weren't in the briefing by the defense, but I will address them to some degree. Most recently, I believe it was the Brown case, and it kind of cites back to indicative to another case, Turner from 2015. The Brown case was just decided, I believe, in December of 2023, but there's also Mons in 2019, and... Counsel, I assume these cases are not in your brief or his brief, right? That's correct. So send us a 28-J letter, at least with the citations. Thank you. The Brown case changed my attention just prior, so I'll bring that to you. You can make your argument, Counsel, go ahead. But the bottom line is the analysis in some of those cases, and in the 404B cases in general, is that you look at this, and if it's carefully considered with the 404B evidence, it goes beyond just merely reciting that it's 404B or planned, whatever. And in this case, the district court did. He specifically went through and found a modus operandi of those things, such as plan, motive, intent, and it explains those things by that modus operandi analysis. I'm going to turn to the verdict form. In this particular case, as has already been brought out, the original case tried the first time around before a mistrial by virtue of a jury misconduct issue. The jury acquitted on the three guns, but the evidence was presented as to their various locations and the evidence of the defendant's responsibility for that. But the one gun was left, and so it was cited in the next case, proposed instructions by both parties, not objected to prior to trial, not objected to the day of trial. The court had a hearing on pre-trial motions and pre-trial issues, including instructions. It was agreed to again then. It was also agreed, it was not objected to during the trial, it was not objected to in post-trial motions. It was only brought up in this particular case on appeal. Government's position is that the defendant has waived that, or reliances on it. Counsel, the waiver cases, and you cite one or two of them, there are a lot of waiver cases, and that's usually where the judge makes a big point of saying, these were jointly proposed, the counsel met all night last night, that kind of talk. This isn't that kind of case, is it? I don't, those cases I think deal more with instructions. Typically, this is a verdict form, so there's a slight difference there, but yes, you're correct. But in this case, you still have the fact that it was jointly proposed, agreed to, never objected to, and... No, I thought they were proposed, these were judge proposed. They were just not jointly objected, they were not objected to, that's what we've got here. Right, most you got, right? Judge proposed, parties proposed joint instructions to the judge, the judge then proposes back to us proposed instructions. What's in the record is the court's proposed instructions, and in this case, there's no evidence at any time where the defendant was trying to propose something different, either before it goes on the record or after, and then it's not objected to. And I do think that that Jackson case talks about it, and that it's, I argue that it's almost a definition of waiver by not objecting until at least absolutely at this time. I also understand how it comes about when new counsel gets in and reviews the record kind of differently in that regard. Well, let's assume that we don't see it that way, and that we're in plain error land. Why is there no plain error? Under the plain error analysis, I just don't see that there is the prejudice to the defendant when you look, as you raised earlier, and you look at the instructions as a whole, you look at the evidence as the whole, you look at the charge as a whole, because the charge, you know, the charges regarding his possession of gun on that specific date, which is the date in which he was, it was seized, which is the separate search warrant, second search warrant that was February 2nd. I believe the original search warrants were on the 28th of January, and now we have February 2nd. When you look at the totality of that, there just isn't the prejudice to it when the verdict form has the single gun that was charged, the single gun that was really talked about, or at least primarily talked about, and therefore that's what the jury was looking at. There was really no evidence that the jury was looking at anything else other than that gun that was found behind the drywall based on the evidence, and based on how it was charged and argued. And their argument is, so we talked about other guns, and that somehow the reference to Instruction 9 is not sufficient to clear why are they wrong on that argument? I think when you look at it, I think a jury is left with its instruction. It's a pretty plain language instruction, and when you have the charge as limited as it is, and you have the evidence as limited as it is, there was evidence of the other guns that was discussed. Not the guns, there was no evidence of the three guns that were acquitted. That evidence didn't come in, but there was evidence of his storage of weapons at another place, and you have in this case, he's storing it behind a drywall, and that's what was not objected to, not even raised on appeal at this stage, but I think that there was a very big distinction between the 17 guns over there on a different date, and then the gun that was found behind the drywall and the basis for how that was, and I think that defeats that. So there'd be no reason for us to believe that a reasonable juror would have been, or could have been, confused by the nature of the instructions in the first place? That's our argument, based on those totality of facts. Now I'll turn to sentencing issues. At this stage, the court considered a number of things after the pre-sentence report came out. The pre-sentence report applied a number, several enhancements, a base level 38 for over 45 kilograms of methamphetamine, plus one for protected location, which was also found by the jury, plus three for aggravated role, which there was additional evidence, besides the evidence that was put in the record, and there were some documents, a lot of documents, but a lot of it was transcripts of sections of the trial testimony. And then there was an aggravated role enhancement, was also supported by jail phone calls in which the defendant was asking his girlfriend and his wife to try and get drugs, try to get money. The methodology of that, it was somewhat the officer. And then there also was the defendants, the non-testimonial but documentary evidence of Mr. Weatherall, who was collecting debt for the defendant, not even including Mr. Recker, who was storing drugs and testified at both trials in regards to his storage of drugs, or allowing use of his property in exchange for drugs, and finding stored drugs there. So all in all, just a number of different people that, well over five that the defendant directed to do certain things in regards to the distribution of methamphetamine, and it only takes one event, and only takes one person, once you get past five, in order to get that aggravated role. And then probably a little more delicate issue was the use of violence, threats of violence. No requirement of actual violence, but there was, in the report there was, that he had been struck about the violence enhancement is not appealed, right? That's correct. And that was also applied because of that particular evidence that the court considered. But the court didn't apply the obstruction of justice enhancement, found that there was not evidence there. So the court did a careful analysis of all those particular enhancements, then came up with a sentence, and even though it's over, I think it's 46 it came to when probation had it at 48, 43 is the cap, 360 life, judge went down to 300 months with a denalysis of other variance factors. So I think that there is a substantive reasonableness in the record for how the court reviewed all that evidence and came to that conclusion. Thank you. Thank you for the argument. Mr. Roth. Thank you, Your Honor. I guess getting back to kind of where Mr. Wade left off, as far as the huge chunk of the weight in Mr. Hansen's case, well, pretty much all of it came from cooperator testimony. But an additional or, you know, another huge chunk of it came from basically secondhand statements presented through agents from the other person, Michael Weatherill. That's where, you know, some of the evidence also for the three-point enhancement for the manager supervisor role came from. I know the government made the argument about it only takes one. However, the district court did decide, and that was in the precinct's investigation report, that it was up to three points because it did involve at least five people. And I believe a few of those five people were, again, the secondhand people, the Ashley Hine and the Weatherill. So we believe that three-point enhancement wasn't warranted, as well as the large amount that was given for the weight. As far as the government's arguments about the verdict form, I know the government had just argued that there was no prejudice to Mr. Hansen. However, we assert there was prejudice with the incorrect verdict form. I mean, it's potential that Mr. Hansen was found guilty of a crime he didn't commit or found guilty of possessing a firearm that was not prejudice. And your honors, if there's no other questions, and that's my argument, we're asking the court to reverse and remand. Thank you. Thank you, counsel, for the argument. Two cases, 23-2188 and 23-2189, are submitted for decision by this court.